IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3126-FL

| | | |
|---|---|---|
| ABDUL-AZIZ RASHID MUHAMMAD, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | ORDER |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

This matter comes before the court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) of defendant the United States of America ("defendant") (DE # 18). Plaintiff filed a motion for a preliminary injunction (DE # 21), a motion for default judgment (DE # 23), and a motion for leave to supplement his motion for default judgment (DE # 24). The court construes plaintiff's motion for leave to supplement his motion for default judgment as a response to defendant's motion to dismiss. In this posture, the matters are ripe for adjudication. For the following reasons, the court grants defendant's motion, and denies plaintiff's motions for a preliminary injunction and for default judgment.

**STATEMENT OF THE CASE**

On July 12, 2011, plaintiff filed this action pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2672, *et seq.*, alleging that defendant acted with negligence to his medical care. On February 28, 2012, defendant filed a motion to dismiss pursuant to Rule 12(b)(6), arguing

that plaintiff failed to state a claim upon which relief may be granted. The matter was fully briefed. Plaintiff subsequently filed a motion for a preliminary injunction and a motion for default judgment.

**STATEMENT OF FACTS**

Plaintiff, a federal inmate, was incarcerated at the Federal Correctional Complex in Butner, North Carolina at the time he filed this action.[1] At Butner, plaintiff was designated as a chronic care patient due to his diagnoses of "hepatitis C, [peripheral vascular disease ("PVD")], high blood pressure, obstructive sleep apnea, esophageal reflux, and left anterior fascicular block, and kidney disorder." Compl. p. 9. Plaintiff's claims arise out of the medical care provided by Butner staff, including physician assistant Gonzalez ("Gonzalez"), Nurse Ferdette ("Ferdette"), and Nurse Kilpatrick ("Kilpatrick").

On March 9, 2009, Gonzalez examined plaintiff at the Butner health services department following plaintiff's complaints of "acute, excruciating, constant, and debilitating pain in both his upper and lower extremities." Id. p. 13. Gonzalez did not examine plaintiff's lower extremities stating that she would only address one of plaintiff's complaints at that appointment. Gonzalez instructed plaintiff to make another sick call appointment to address the remaining issues. Plaintiff then left the health services department without being evaluated for the pain in his lower extremities.

Plaintiff later followed Gonzalez's instruction and made a second sick call request. Id. Plaintiff then saw Ferdette, a nurse, "who only listened to [his] complaint, but <u>did not examine</u> [him], nor seek the advice of a senior physician <u>despite</u> the fact that [plaintiff] showed her his <u>badly swollen</u> feet and informed her that he was in <u>acute</u> and <u>constant debilitating</u> pain." Id. pp. 13-14 (emphasis in original). Ferdette instructed plaintiff to "watch the call out for an appointment, that

---

[1] The court notes that subsequent to filing this action plaintiff was transferred to the Federal Correctional Institution in Gilmer, West Virginia.

he would be called." Id. Plaintiff left the health services department without the proper triage assessment and was not called for an appointment. Plaintiff then went to the health services department on March 16, 24, and 26, 2009, but was not examined. Rather, Ferdette instructed plaintiff that he had to wait to be seen by his provider.

On April 1, 2009, plaintiff saw Gonzalez, and informed her that he had been trying to get an appointment to get his feet examined since his March 9, 2009, appointment. Id. p. 15. Gonzalez responded that she would address his foot issues at his chronic care appointment the following day. Id. At his chronic care appointment the next day, plaintiff showed Gonzalez open cuts on his feet and a small pus and blood filled hole in his right foot, "which [Gonzalez] acknowledged, but failed to treat, clean, dress, bandage, or take culture of, deferring treatment 'if it became symptomatic.' " Id. p. 16 (emphasis in original).

On April 6, 2009, plaintiff went to the Butner health services department on "an emergency basis due to acute, excruciating, and debilitating pain in feet, with [a] hole opening up larger in right foot." Id. p. 17. Ferdette denied plaintiff treatment because he did not have an appointment. Plaintiff then submitted a sick call request and was seen by a nurse the following day. The nurse, however, failed to treat his condition.

From April 8 through April 15, 2009, plaintiff reported to the health services department complaining of "acute pain, with larger pus and blood-filled venous stasis ulcer related to PVD/PAD." Id. pp. 20-21 (emphasis in original). Medical staff denied plaintiff treatment, and threatened that he would be placed in the special housing unit if he continued to report to the health services department without being summoned. Plaintiff states that medical staff ignored the fact that

3

his wound had gotten bigger and that his leg "was a bluish green and dark purple color, and that blood and pus were seeping out of wound through [his] socks." Id.

On April 16, 2009, at the Butner health services department, plaintiff pleaded with physician assistant Hule ("Hule") to look at his feet. Hule looked at plaintiff's feet, and took him to her office for treatment. At her office, Hule cleaned plaintiff's wound and ordered that he be started on antibiotics. Gonzalez and Hule tentatively diagnosed plaintiff with cellulitis, and an abscess on his leg. Plaintiff was prescribed Cephalexin to treat his infection, but did not receive any pain medication. Ferdette was instructed to allow plaintiff into the health services department's waiting area. However, the next day, Ferdette did not allow plaintiff to remain in the health services department's waiting area for his appointment, and plaintiff left the unit untreated. Ferdette told plaintiff that the health services department would call him when it was time for his appointment.

On April 18, 2009, a Saturday, plaintiff went to the medical unit complaining of pain. The nurse on duty told plaintiff that he would have to wait until the following Monday to see Gonzalez. Plaintiff went to the health services department the following day "seeking pain relief and swab cultures to specifically identify [the] type [of] bacteria infecting [his] system and was told by the medical official on duty that 'there is nothing that I can do for you without permission from your provider.' " Id. p. 28.

On April 20, 2009, plaintiff requested pain medication from the nurse on duty and was told that he could get some medication when he went to the Federal Medical Center ("FMC"). However, when plaintiff was taken to FMC Butner, the medical staff refused to provide him with pain medication. When plaintiff returned to his unit, he again was denied pain medication. Gonzalez instructed plaintiff to make a sick call appointment on the following day.

4

On April 21, 2009, plaintiff went to the health services department pursuant to instructions from Gonzalez. Plaintiff first was approached by Ferdette, who attempted to "put [plaintiff] out of the [health services department.]" Id. p. 30. Plaintiff, however, ignored Ferdette and remained in the health services department. At approximately 7:26 a.m., plaintiff was approached by Kilpatrick, a nurse. Plaintiff informed Kilpatrick that Gonzalez told him that she would see him after her morning meeting. Kilpatrick responded that Gonzalez would not complete her morning meeting until 8:30, and that she would call him when Gonzalez was available. Plaintiff responded that he would rather wait to see Gonzalez. Ferdette then returned and told plaintiff that he must leave the health services unit or he would be placed in the special housing unit. Plaintiff then left without treatment.

At 8:30 on April 21, 2009, plaintiff asked Mrs. Champion to call the health services department to request an emergency appointment because he was suffering unbearable pain. Ferdette instructed Mrs. Champion to have plaintiff make a sick call request in the morning. Later that morning, plaintiff again went to medical. Kilpatrick stopped plaintiff and stated the following: "[W]e talked about you this morning at our meeting we know about you, you do not have an emergency so leave medical now, you are out of bounds." Id. p. 32 (emphasis in original). At approximately 10:55 a.m. that same morning, plaintiff's case manager, Mrs. Harris, called the health services department on plaintiff's behalf and spoke with Ferdette. Mrs. Harris informed Ferdette that plaintiff needed to be seen by medical because he was in obvious pain, was limping, and that he had a bloody and swollen foot. Ferdette responded that plaintiff did not have an emergency and advised Mrs. Harris to have plaintiff make a sick call appointment the following morning, despite knowing that there is no sick call on Wednesdays.

5

On April 22, 2009, plaintiff went to the health services department at 6:45 a.m. seeking follow up care. Plaintiff informed medical staff that his feet were getting worse and that he could barely walk. Ferdette again instructed plaintiff to leave without any treatment. At approximately 8:45 a.m., officer Ragland observed plaintiff's feet and called the health services department to get plaintiff an emergency appointment. Ferdette instructed officer Ragland to have plaintiff make a sick call appointment. Plaintiff asserts that Ferdette refused to provide him medical treatment despite the physician assistants' orders to allow him to remain in the medical unit for treatment.

Two days later, plaintiff saw Dr. Eric Payne ("Payne") at the health services department. Payne cleaned and dressed plaintiff's wound. After examining plaintiff, Payne diagnosed him with a venous stasis ulcer related to his PAD/PVD and prescribed a medical treatment plan.

Plaintiff alleges that Butner prison staff failed to "timely address [his] complaints of acute, constant and debilitating pain in swollen feet, one with a bloody, pus filled ulcer related to Muhammad's peripheral vascular disease [("PVD')] or peripheral artery disease ["(PAD)"]. Compl. p. 2 (emphasis in original). Plaintiff states that the medical staff's failure to timely diagnose his ulcer caused two "deadly" bacterial infections–escherichia coli and pseudomonas aeruginosa bacteria. Plaintiff states that the actions of Butner's medical staff created "at more serious risk to his health by experiencing various other illness/injuries, that he did and continues to suffer due to his compromised immune system from Hep-C virus, and PAD/PVD disease, including, but not limited to stroke and heart attack." Id. p. 44 (emphasis in original).

# DISCUSSION

A.  Motion for a Preliminary Injunction

Plaintiff requests that this court issue a preliminary injunction ordering that prison officials at the Federal Correctional Institution in Gilmer, West Virginia, provide him with postage stamps to mail his legal documents. A preliminary injunction is an extraordinary remedy which should not be granted unless there is a clear showing of both likely success and irreparable injury. The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 345 (4th Cir. Aug. 5, 2009), vacated on other grounds, 130 S.Ct. 2371 (2010), vacated on other grounds, 130 S.Ct. 2371 (2010). The United States Supreme Court has stated that the movant must establish the following to obtain a preliminary injunction: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). The Real Truth About Obama, Inc., 575 F.3d at 346.

Here, plaintiff has not demonstrated that he is likely to succeed on the merits. Plaintiff also has not alleged facts necessary to demonstrate that he likely would suffer irreparable harm if his motion is not granted and defendant is not ordered to provide him with postage stamps. Rather, it is evident from the record that plaintiff has been able to litigate this action despite the alleged postage issues, because he submitted two *pro se* filings subsequent to his motion for a preliminary injunction. Finally, plaintiff has not demonstrated that his request for a preliminary injunction is in the public interest. Accordingly, the balance of equities is in favor of defendant, and plaintiff's motion for a preliminary injunction is DENIED.

B.  Motion for Default Judgment

On December 6, 2011, the Clerk of Court notified defendant that its response to plaintiff's complaint was due by January 28, 2012. The court subsequently allowed defendant an extension of time until February 29, 2012, to respond to plaintiff's complaint. Defendant timely responded to plaintiff's complaint on February 28, 2012. Thus, plaintiff's motion for default judgment is DENIED.

C.  Motion to Dismiss

1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-plead facts as true and construes these facts in the light most favorable to the [plaintiff]," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 557).

8

2.  Analysis

Plaintiff alleges that Butner medical staff failed to timely examine, diagnose, or treat his venous stasis ulcer resulting in diagnoses of two bacterial infections and complications with his other medical conditions. In response, defendant asserts that plaintiff's action should be dismissed because he failed to comply with North Carolina Rule of Civil Procedure 9(j).

North Carolina imposes substantive legal requirements that a person must follow to pursue a medical malpractice claim. See N.C. R. Civ. P. 9(j). Under North Carolina Rule of Civil Procedure 9(j), a plaintiff's medical malpractice complaint must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care. See N.C. R. Civ. P. 9(j)(1), (2); see, e.g., Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004); Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713 (E.D.N.C. 2001); Acosta v. Byrum, 180 N.C. App. 562, 572, 638 S.E.2d 246, 253 (2006). Failure to comply with Rule 9(j) is grounds for dismissal of a state medical malpractice claim brought in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier, 308 F. Supp. 2d at 676–77; Moore, 139 F. Supp. 2d at 713. Alternatively, the complaint must allege facts establishing negligence under the common-law doctrine of *res ipsa loquitur*. See N.C. R. Civ. P. 9(j)(3).[2]

---

[2] Plaintiff's status as a prisoner does not excuse his failure to comply with Rule 9(j)'s pre-filing certification requirements. See, e.g., Smith v. United States, No. 1:08cv838 (LO/JFA), 2010 WL 256595, at *3 n.5 (E.D. Va. Jan. 19, 2010).

In this case, plaintiff admits that no certification has been submitted, but instead relies upon the doctrine of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* "is allowed only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000); see, e.g., Tice v. Hall, 310 N.C. 589, 593, 313 S.E.2d 565, 567 (1984) (surgical sponge left in patient's body). Specifically, the doctrine of *res ipsa loquitur* applies when "(1) direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident is under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." Grigg v. Lester, 102 N.C. App. 332, 333, 401 S.E.2d 657, 657-58 (1991). Additionally, "in order for the doctrine to apply, not only must plaintiff have shown that [the] injury resulted from defendant's [negligent act], but plaintiff must be able to show-without the assistance of expert testimony-that the injury was not of a type typically occurring in absence of some negligence by defendant." Howie v. Walsh, 168 N.C. App. 694, 698, 609 S.E.2d 249, 251 (2005) (quotations omitted).

The court first addresses whether plaintiff properly plead negligence through the doctrine of *res ipsa loquitur* with respect to his allegations that Ferdette and Kilpatrick, both nurses, delayed and denied him treatment for his foot condition for a period of one month. The relevant question under these circumstances is whether the actions of Ferdette and Kilpatrick caused plaintiff to contract escherichia coli and pseudomonas aeruginosa bacteria, or caused the other complications related to his foot condition. The court finds that this question may not be answered in the absence of expert testimony, particularly in light of the fact that plaintiff also alleges that Gonzalez and Hule, both physician assistants, allegedly caused his injury because they misdiagnosed his venous stasis ulcer as cellulitis. See Warden v. United States, 861 F. Supp. 400, 403 (E.D.N.C. 1993), aff'd, 25

10

F.3d 1042 (4th Cir. 1994) (finding decision to treat prisoner's condition as a non-emergency caused plaintiff's injury is not a matter of common knowledge and *res ipsa loquitur* is not applicable); Frazier v. Angel Medical Center, 308 F. Supp.2d 671, 677 (W.D.N.C. Mar. 16, 2004) (finding no *res ipsa loquitur* where specialist provided emergency care and instructed the patient to return for follow-up care). Moreover, the decision of how and when to treat a plaintiff's medical condition is a professional service requiring the use of specialized skill and knowledge requiring certification pursuant to Rule 9(j). See Alton v. Granville Health System, 727 S.E.2d 877, 880 (N.C. App. 2012); Deal v. Frye Regional Medical Center, Inc., 202 N.C. App. 584, 691 S.E.2d 132, 2010 WL 522727, at *2 (Feb. 16, 2010) ("When nurses make 'medical decision[s] requiring clinical judgment and intellectual skill,' they are providing professional services, and therefore the action against them must be certified per Rule 9(j)") (quoting Sturgill v. Ashe Mem'l Hosp., Inc., 186 N.C. App. 624, 630, 652 S.E.2d 302, 306 (2007)). Based upon the foregoing, the court finds that plaintiff has not properly plead the doctrine of *res ipsa loquitur* for this claim.

As for plaintiff's remaining claims against the remaining Butner medical staff, he has not properly plead the doctrine of *res ipsa loquitur* because a jury would be unable to determine, in the absence of expert testimony, whether plaintiff's bacterial infections and complications related to chronic medical conditions were caused by the Butner medical staffs' alleged failure to timely diagnose and treat his ulcer. See e.g., Cartrette v. Duke University Medical Center, 189 N.C. App. 403, 659 S.E.2d 98, 2008 WL 711171, at *4 (2008) (stating that "the doctrine of *res ipsa loquitur* in medical malpractice cases has generally been limited to injuries resulting from surgical instruments or other foreign objects left in the body following surgery and injuries to a part of the patient's anatomy outside of the surgical field.") (citations and quotation omitted); see Stevenson

11

v. N.C. Dept. of Corr., 714 S.E.2d 435, 437 (N.C. App. Mar. 15, 2011) (finding allegation that "examination was inadequate because it only consisted of what plaintiff characterized as a 'cursory' glance at the infected area is not the type of negligence that a jury could infer through common knowledge and experience[,] . . . [e]xpert testimony would be required in order to determine whether . . . examination was sufficient under the applicable standard of care, and as a result, plaintiff's claim also failed to establish negligence under the doctrine of *res ipsa loquitur*.") (quoting Diehl v. Koffer, 140 N.C. App. 375, 378-79, 536 S.E.2d 359, 362 (2000)).

Based upon the foregoing, plaintiff has not alleged facts sufficient to establish negligence under the common-law doctrine of *res ipsa loquitur*. Thus, plaintiff fails to meet the requirements of Rule 9(j), and his negligence claim is DISMISSED without prejudice.[3]

## CONCLUSION

Based upon the foregoing, defendant's motion to dismiss (DE # 18) is GRANTED, and the action is DISMISSED without prejudice. Plaintiff's motion for a preliminary injunction (DE # 21) and motion for default judgment (DE # 23) are DENIED. Because the court construed plaintiff's motion for leave to supplement his motion for default judgment (DE # 24) as a response to

---

[3] The court also notes that plaintiff states that "[i]f the court desires [him] to file under 9(j) of the North Carolina Rules of Civil Procedure, he will do so." Pl.'s Mot. for Default J. Plaintiff, however, may not file the Rule 9(j) certification in this action. Rather, he must re-file his complaint to include the Rule 9(j) certification. See Moore v. Proper, 726 S.E.2d 812, 817 (2012) (citing Thigpan v. Ngo, 355 N.C. 198, 558 S.E.2d 162, 166 (2002)).

12

defendant's motion to dismiss, the court DENIES it as moot. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the  10  day of September, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge